[Cite as *State v. Florence*, 2014-Ohio-167.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                     :

    Plaintiff-Appellee,                       :             CASE NO.   CA2013-05-070

                                      :             O P I N I O N
    - vs -                                         1/21/2014

                                        :

CHRISTOPHER L. FLORENCE,               :

    Defendant-Appellant.                     :


CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CRB1300037 A&B


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**S. POWELL, J.**

{¶ 1}  Defendant-appellant, Christopher Florence, appeals from his convictions in the Butler County Area II Court for disorderly conduct and obstructing official business.  For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2}  On December 31, 2012, appellant was arrested and charged with disorderly conduct, a misdemeanor of the fourth degree, in violation of R.C. 2917.11(A)(4), and obstructing official business, a misdemeanor of the second degree, in violation of R.C.

2921.31.

**{¶ 3}** A bench trial was held on April 17, 2013 wherein Deputy Michael Brockman of the Butler County Sheriff's Department testified regarding the events of December 31, 2012. Brockman stated that, after receiving a call about an intoxicated female attempting to drive, he responded to a residence off Millville-Oxford Road in Hanover Township, Butler County, Ohio at around one or two in the morning. Upon arriving at the residence, Brockman was greeted by appellant, who explained "his girlfriend had too much to drink" and, because she had a long drive home, appellant "want[ed] her to stay" so he "took her keys so she couldn't travel or drive." At this time, Deputy Damon Mayer of the Butler County Sheriff's Department arrived at the scene and Brockman turned his attention to appellant's girlfriend.[1]

**{¶ 4}** According to Brockman, appellant's girlfriend explained she and appellant had been drinking and watching a football game at around 8:00 p.m. on December 30, 2012, but she had ceased drinking no later than 9:00 p.m. As it was now 2:00 a.m., appellant's girlfriend stated she was not intoxicated and wanted to go home. Brockman testified he "didn't smell anything on her breath" and found no indication of slurred speech. Brockman instituted a "horizontal gaze nystagmus" test on the girlfriend's eyes to determine if she was intoxicated. The test indicated appellant's girlfriend was not intoxicated.

**{¶ 5}** Upon determining that the girlfriend was not intoxicated, Brockman approached Mayer and appellant and informed both that he had given appellant's girlfriend an eye test and that she was "fine to drive." Brockman instructed appellant to hand over the car keys. Appellant responded that he "determined [his girlfriend] is too intoxicated to drive" and refused to hand over the keys. Brockman testified he and appellant then "semi-argu[ed]" for approximately ten minutes outside of the residence. Brockman stated he would have

---

1. Appellant's girlfriend is never identified by name in the record.

arrested appellant at this time, but he wanted to get the car keys and no one but appellant knew where they were located. Therefore, Brockman told appellant "don't go to jail over something silly." Appellant then agreed to enter the residence and retrieve the car keys.

{¶ 6} Brockman and Mayer accompanied appellant to the door of the residence, where appellant initially refused to allow the deputies to enter. Brockman stated that, for officer safety, he and Mayer were going to accompany appellant into the home. After several more minutes of arguing, Brockman testified he "assisted [appellant] through" the door of the residence and appellant, Brockman, and Mayer traveled to the bedroom of the residence where appellant eventually retrieved the keys from under some clothes in the bedroom. Brockman testified he instructed appellant to hand over the keys, but appellant refused because "he wanted to give them to [his girlfriend]." Brockman testified he "removed" the car keys from appellant's hand and placed appellant under arrest.

{¶ 7} Brockman testified that, had appellant simply handed over his girlfriend's car keys the first time they were requested, the whole incident would have taken no more than "five or six or seven minutes." However, because of appellant's conduct, the deputies were on the scene for "a good 20 minutes or so, 20 minutes to a half hour."

{¶ 8} Mayer then took the stand and corroborated Brockman's testimony. Mayer explained appellant continuously stated that this was a "civil issue" and that he would not return the car keys to his girlfriend. Mayer stated that, once appellant agreed to retrieve the keys from the residence, Mayer and Brockman began to accompany appellant inside, due to "safety concerns." Mayer testified that it took approximately "five minutes" of arguing with appellant outside the residence before appellant agreed to retrieve the keys and then appellant continued "hem hawing around" inside the residence before actually finding the keys. Without appellant's conduct, Mayer testified he and Brockman would have been "in and out of there in five or ten minutes."

{¶ 9} Upon the conclusion of Mayer's testimony, the state rested and appellant testified in his own defense. Appellant explained he and his girlfriend had been out drinking for several hours that night. When they returned to his residence, appellant took the car keys from his girlfriend so that she could not drive home, as "there was snow all over the ground," she lived "80 miles away," and "she had been drinking." After the couple argued over the keys for some time, appellant's girlfriend called the police.

{¶ 10} Appellant testified that, before the deputies arrived, he took the keys in the house and "hid them" so that his girlfriend "couldn't find them and take off" because he was concerned about her safety. Appellant then went out onto the driveway of the residence to greet the deputies, "because [he] knew * * * they would ask for the keys." Appellant informed Brockman that his girlfriend was drunk and that he was concerned about her driving. According to appellant, Brockman then "waved [a] pen in front of her eyes for a few seconds and said she was okay" and that appellant needed to return the keys to her. Appellant informed the deputies he "didn't think it was a good idea to return the keys to her because [he] didn't think she was safe to drive." After discussing the issue with the deputies, appellant "reluctantly" agreed to get the keys from inside the residence.

{¶ 11} Appellant and the deputies then walked to the front of the house, where appellant told the deputies he did not want them coming into his residence. After Brockman informed appellant that he did not need a warrant to enter the residence, appellant testified he allowed the deputies to follow him into the residence. According to appellant, the entire conversation took "three seconds."

{¶ 12} Appellant testified he and the deputies then walked straight into his bedroom but appellant could not remember where he hid the keys as it had been an hour since he hid them. After "maybe two or three minutes," appellant was able to find the keys and stated his intention to give the keys to his girlfriend. However, Brockman told him "you ain't going

nowhere, you ain't giving her nothing." At this time, appellant stated he handed Brockman the keys and Brockman placed him under arrest. Appellant indicated the entire incident occurred in approximately five minutes.

{¶ 13} The trial court ultimately found appellant guilty of both disorderly conduct and obstructing official business. Appellant was sentenced to 90 days in the Butler County Jail, with 90 days suspended and a two-year term of nonreporting probation.

{¶ 14} From his conviction, appellant appeals, raising a single assignment of error:

{¶ 15} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS ENTERED IN THE COURT BELOW AND THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIM.R. 29.

{¶ 16} In his sole assignment of error, appellant contends the trial court erred in convicting him of disorderly conduct and obstructing official business because the state failed to present sufficient evidence warranting conviction.

{¶ 17} The same test is applied when reviewing the trial court's denial of a motion for acquittal under Crim.R. 29 as when addressing a challenge to the sufficiency of the evidence supporting a conviction. *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 26, citing *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25. Under both arguments, the function of an appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 18} "A review of the sufficiency of the evidence does not require this court to

determine the witnesses' credibility." *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 37, citing *State v. Renner*, 12th Dist. Clinton No. CA2002-08-033, 2003-Ohio-6550, ¶ 16. "Rather, this court defers to the trier of fact which is in the best position to judge the credibility of witnesses, and to determine the weight to be given the evidence." *Id.*

**Disorderly Conduct**

{¶ 19} Appellant first contends that insufficient evidence was presented to support his conviction for disorderly conduct. Specifically, appellant asserts the evidence submitted at trial was insufficient to prove he (1) engaged in the specific conduct proscribed under R.C. 2917.11(A)(4); (2) caused his girlfriend inconvenience, annoyance, and alarm; and (3) lacked a lawful and reasonable purpose for his actions.

{¶ 20} Pursuant to R.C. 2917.11(A)(4), "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender." A person acts recklessly when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 21} Appellant first contends he did not prevent his girlfriend from moving upon "a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property." Rather, appellant argues he withheld his girlfriend's car keys "out of concern for her safety" and to prevent her from leaving the residence.

{¶ 22} The refusal to allow an individual on or off one's personal property can be a violation of R.C. 2917.11(A)(4). *See State v. Carter*, 3d Dist. Paulding No.11-10-08, 2011-Ohio-522, ¶ 28 (finding sufficient evidence was presented to establish a violation of R.C.

2917.11(A)(4) where the defendant refused to allow an electric company to enter his property in order to remove utility poles). In this case, appellant prevented his girlfriend from exiting his personal property and moving upon public streets, roads, and highways by withholding her car keys. This prevention of movement lasted for at least the 20 to 30 minutes it took the deputies to retrieve the car keys from appellant. Upon a thorough review of the record, sufficient evidence was presented that appellant prevented his girlfriend from exiting his property and proceeding onto public streets, roads, highways, and right-of-ways.

{¶ 23} Second, appellant contends insufficient evidence was submitted to establish that his girlfriend experienced inconvenience, annoyance, or alarm as a result of his conduct. Appellant's girlfriend did not testify at trial. Appellant therefore contends that, while his girlfriend may have contacted the police, there was no evidence regarding her actual feelings about the incident.

{¶ 24} The evidence presented at trial established that appellant and his girlfriend got into a disagreement and that his girlfriend wanted to drive home. Appellant refused to hand over the car keys to his girlfriend, eventually causing her to call the police for assistance. Brockman testified that appellant's girlfriend stated she just wanted to go home. Yet, appellant's girlfriend was prevented from leaving appellant's residence for at least 20 to 30 minutes after the arrival of the deputies.

{¶ 25} Although appellant's girlfriend did not testify, the evidence presented is sufficient to support a finding that the girlfriend was inconvenienced, annoyed, or alarmed by appellant's behavior. *See State v. Moshos*, 2d Dist. Montgomery No. CA-10825, 1989 WL 119912, * 3 (Oct. 10, 1989). From our review of the record, it appears the trial court could reasonably conclude that the element of disorderly conduct relating to inconvenience, annoyance, or alarm was proven beyond a reasonable doubt.

{¶ 26} Finally, appellant argues he had a lawful and reasonable purpose for

- 7 -

withholding his girlfriend's car keys because, whether or not his assumptions were correct, appellant believed his girlfriend was too impaired to drive. Appellant contends it would set a "dangerous precedent to hold that individuals can be held criminally liable for reasonable, good faith efforts to prevent drunk driving." However, any reasonable purpose for withholding his girlfriend's car keys ceased upon the arrival of the deputies and Brockman's determination that appellant's girlfriend was not intoxicated. After Brockman instructed appellant to return the keys, appellant waited another seven to ten minutes before attempting to find the keys and another five to ten minutes before handing the keys to the deputy, who then provided them to the girlfriend. *See City of Cleveland v. Egeland*, 26 Ohio App.3d 83, 86 (8th Dist.1986) ("The offender's conscientious belief in the importance of the subject about which he demonstrates does not provide him with a lawful privilege to obstruct the roadway").

{¶ 27} Therefore, because sufficient evidence was presented for each element of disorderly conduct under R.C. 2917.11(A)(4), appellant's first argument is overruled.

**Obstructing Official Business**

{¶ 28} As to his obstructing official business conviction, appellant argues he did not act in any manner that hampered or impeded the deputies from carrying out their lawful duties on December 31, 2012. Specifically, appellant contends that his refusal to hand Brockman the car keys was not an obstruction of official business because the failure to act is not an "act that hampers or impedes a public official."

{¶ 29} Pursuant to R.C. 2921.31, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." In general, "the offense of obstructing official business requires the doing of some affirmative act by a defendant."

- 8 -

*State v. King*, 3d Dist. Marion No. 9-06-18, 2007-Ohio-335, ¶ 58, citing *State v. Muldrow*, 10 Ohio Misc.2d 11 (M.C.1983). "A person cannot be guilty of obstructing official business by doing nothing or by failing to act." *Hamilton v. Hamm*, 33 Ohio App.3d 175 (12th Dist.1986).

{¶ 30} However, failing to act may still constitute obstruction of official business in certain circumstances. In *State v. Wolf*, for example, the defendant was convicted of obstructing official business after refusing to leave a meeting of the board of health. *State v. Wolf*, 111 Ohio App.3d 774, 774 (7th Dist.1996). On appeal, the Seventh Appellate District determined appellant's "act of sitting at the meeting table where the board of health sat, coupled with his refusal to remove himself when asked to do so," constituted the obstruction of official business under R.C. 2921.31(A). *Id.* at 778-779.

{¶ 31} Likewise, in the case at hand, appellant's act of hiding his girlfriend's keys, coupled with his refusal to search for the keys and refusal to hand the keys over to the deputies constituted the obstruction of official business. The evidence at trial revealed appellant spent approximately 20 to 30 minutes arguing with the deputies rather than retrieving the car keys so that everyone could be on their way.

{¶ 32} In viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined appellant's repeated refusals to search for the keys, to locate the keys, and to hand over the keys were all performed with the purpose of preventing, obstructing, or delaying Brockman and Mayer's performance of their duties. As appellant stated in his testimony, appellant disagreed with Brockman's determination that appellant's girlfriend was not intoxicated and able to drive. Because appellant disagreed with the deputy, he acted in a manner to prevent the deputy from performing his duty of securing the car keys and permitting appellant's girlfriend to leave the residence.

{¶ 33} Therefore, because sufficient evidence was presented for each element of obstructing official business under R.C. 2921.31, appellant's second argument is overruled.

{¶ 34} After examining the evidence admitted at trial, we find sufficient evidence was presented which, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt for the crimes of disorderly conduct and obstructing official business. Accordingly, appellant's sole assignment of error is overruled.

{¶ 35} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.