[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hildebrand v. Wingate Transport, Inc.,* Slip Opinion No. 2014-Ohio-167.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-167

THE STATE EX REL. HILDEBRAND, APPELLANT, *v.* WINGATE TRANSPORT, INC.,

ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it

may be cited as *State ex rel. Hildebrand v. Wingate Transport, Inc.,*

Slip Opinion No. 2014-Ohio-167.]

*Workers' compensation—Temporary-total-disability compensation—Voluntary abandonment of the workforce for reasons unrelated to industrial injury— Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 2011-1616—Submitted August 19, 2014—Decided January 22, 2015.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-625, 2011-Ohio-3787.

_____

**Per Curiam**.

{¶ 1}  This case involves an injured worker's eligibility for temporary-total-disability compensation after he quit his job on the same day that he reported to work with a note from his doctor restricting him to modified duty.  Appellee Industrial Commission determined that appellant Brian J. Hildebrand Jr. voluntarily abandoned the workforce when he quit his job for reasons unrelated to

his industrial injury and therefore was ineligible for temporary-total-disability compensation.

{¶ 2}   The Tenth District Court of Appeals denied Hildebrand's request for a writ of mandamus.  The court rejected his argument, based on *State ex rel. Pretty Products, Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), that at the time his employment terminated (regardless of whether he quit or was fired), he could not have voluntarily abandoned his employment because he was physically unable to return to the duties of his former position.

{¶ 3}   We find that the court of appeals did not abuse its discretion when it denied the requested writ, because the commission's order denying temporary-total-disability compensation was based on evidence that Hildebrand voluntarily quit his job for reasons unrelated to his industrial injury.  Consequently, we affirm the judgment of the court of appeals.

{¶ 4}   Hildebrand injured his back on June 3, 2009, while working as a mechanic for appellee Wingate Transport, Inc.  He reported the injury to his supervisor.  Five days later, on June 8, 2009, he visited Matthew Bertollini, D.C., who diagnosed a left sacroiliac joint sprain/strain.

{¶ 5}   He returned to work the following day with a note from Dr. Bertollini restricting him to modified duty.  Shortly after he arrived, Jeffrey Wingate, the owner of Wingate Transport, telephoned from a different location to confirm with Hildebrand that he could return to light-duty work.  During the conversation, Wingate asked Hildebrand to return the key to the Jeep that he had loaned him after Hildebrand had totaled his own motor vehicle in an accident. Hildebrand had been using the Jeep for the previous six months.

{¶ 6}   According to Wingate, Hildebrand became agitated and asked if he was being fired.  Wingate replied that he was not fired, but that it was time for him to stop using Wingate's Jeep.  Hildebrand became upset and began loading tools and equipment into the pickup truck of an owner-operator who drove for

Wingate Transport. Wingate returned to the work site and asked Hildebrand to stop so that he could identify the items being taken. When Hildebrand refused, Wingate called the police. Hildebrand eventually cooperated with the police officers who responded, unloaded the items, and left the premises.

{¶ 7} A week later, Hildebrand filed for unemployment benefits. The Department of Job and Family Services determined that he had quit his job on June 9, 2009, for personal reasons without just cause and denied benefits.

{¶ 8} On June 19, 2009, Hildebrand filed a report of his June 3 injury with the Bureau of Workers' Compensation. Wingate Transport objected to the claim because of Hildebrand's history of low-back problems. On September 2, 2009, a hearing officer allowed the claim for left sacroiliac sprain/strain, [1] but denied Hildebrand's request for temporary-total-disability compensation on the basis that he had voluntarily quit on June 9, 2009, and had not reentered the workforce. The hearing officer further found that Wingate Transport had been "ready, willing and able to offer light-duty employment" within Hildebrand's physical capabilities. The commission refused Hildebrand's appeal and denied his request for reconsideration.

{¶ 9} Hildebrand filed a complaint in the Tenth District Court of Appeals seeking a writ of mandamus that would require the commission to find that he was entitled to temporary-total-disability compensation. A magistrate determined that the evidence supported the commission's finding that Hildebrand had quit his job at Wingate Transport for reasons unrelated to his injuries. The magistrate rejected Hildebrand's argument that he could not have voluntarily abandoned his job based on the principle discussed in *State ex rel. Pretty Products,* 77 Ohio St.3d at 7, 670 N.E.2d 466, that a claimant "already disabled when the separation occurred" cannot abandon a former position. According to the magistrate, *Pretty*

---

[1] The claimant's allowed medical condition is not at issue in this appeal.

*Products* and similar cases involved employees who were unable to return to former positions of employment because they had been fired for violating written work rules. The magistrate concluded that because the evidence supported the commission's determination that Hildebrand had voluntarily quit for reasons unrelated to his claim, *Pretty Products* was distinguishable and did not apply.

{¶ 10} The court of appeals overruled Hildebrand's objections to the magistrate's report and denied the writ. The court agreed with the magistrate that the record supported that Hildebrand was not fired but had voluntarily quit. 10th Dist. Franklin No. 10AP-625, 2011-Ohio-3787, ¶ 5-6. Next, the court agreed that the magistrate appropriately concluded that *Pretty Products* and its progeny did not apply because those decisions involved instances in which an employee was discharged from employment, not those in which an employee quit for reasons unrelated to the industrial injury. *Id.* at ¶ 7. Finally, the court overruled Hildebrand's objection that the magistrate had failed to address his argument regarding the accuracy of the hearing officer's statement that he had quit despite the employer having a light-duty job available for him. The court reasoned that under these circumstances, the issue of the availability of a light-duty position was not crucial to the question of his eligibility for temporary-total-disability compensation. *Id.* at ¶ 8.

{¶ 11} Hildebrand appealed as of right to this court. We referred the case to mediation and stayed briefing. After mediation was unsuccessful, the case was returned to the regular docket and briefing commenced.

{¶ 12} To be entitled to an extraordinary remedy in mandamus, Hildebrand must establish a clear legal right to the relief requested, a clear legal duty on the part of the commission to provide the relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. This requires Hildebrand to demonstrate that the commission abused its

discretion by entering an order not supported by the evidence in the record. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).

{¶ 13} Temporary-total-disability compensation is intended to compensate an injured worker who is temporarily unable to return to the duties of his or her former position of employment as a result of a workplace injury. This court has stated that "it must appear that, but for the industrial injury, the claimant would be gainfully employed." *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35. Because temporary-total-disability compensation requires a causal connection between the inability to work and the industrial injury, an injured worker who voluntarily leaves a position of employment is generally barred from receiving temporary-total-disability compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988); *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987).

{¶ 14} Hildebrand does not appeal the finding that he voluntarily quit his job for reasons unrelated to his industrial injury. Instead, he argues that he is not barred from receiving temporary-total-disability compensation because, at the time he left his job—whether he quit or was fired—he was under medical restrictions and unable to perform the duties of his position; thus, his departure cannot be considered voluntary. Hildebrand relies on the principle stated in *Pretty Products* that a claimant who is already disabled when terminated from employment is not disqualified from temporary-total-disability compensation because a claimant can abandon a former position of employment only if physically capable of doing that job at the time of abandonment or removal. *See* 77 Ohio St.3d at 7, 670 N.E.2d 466.

{¶ 15} *Pretty Products* involved a claimant who was off work because of a work-related back injury. Her treating physician certified that she could return to work on March 1, 1991. She did not return and was eventually terminated for

absenteeism. The commission determined that her discharge was not a voluntary abandonment because she did not timely submit an excuse slip from her doctor, and it awarded her temporary-total-disability compensation. *Id*. at 6-7.

{¶ 16} This court concluded that the commission's order was vague and ambiguous and remanded the cause to the commission for clarification. In doing so, this court reaffirmed that to be entitled to temporary-total-disability compensation, the claimant's inability to perform his or her job duties must be the result of the work-related injury. *Id*. at 6. We further stated:

> Once a claimant is separated from the former position of employment, future [temporary-total-disability] compensation eligibility hinges on the timing and character of the claimant's departure.
>
> The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled at the time the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55, 58.
>
> However, such situations are not common, and inquiry into the character of departure is the norm.

*Pretty Products*, 77 Ohio St.3d at 6-7, 670 N.E.2d 466.

{¶ 17} This court has applied *Pretty Products* in other cases in which claimants have been discharged while unable to return to the duties of a former

position of employment. In *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, the claimant truck driver receiving temporary-total-disability compensation was convicted of driving his personal vehicle under the influence of alcohol. OmniSource terminated him for failure to have a valid commercial driver's license (a violation of a work rule) and discontinued paying compensation. The commission concluded that the claimant did not voluntarily relinquish his job because he was already disabled when he had been fired. This court agreed, stating that *Pretty Products* applies to discharges for violations of work rules. *Id*. at ¶ 10.

{¶ 18} In *State ex rel. Luther v. Ford Motor Co., Batavia Transmission Plant*, 113 Ohio St.3d 144, 2007-Ohio-1250, 863 N.E.2d 151, the claimant had been receiving temporary-total-disability compensation until he stopped submitting to his employer medical reports that were required to maintain his temporary-total-disability status. He was eventually terminated for failing to either return to work or provide medical information. The commission concluded that this was a voluntary abandonment and discontinued compensation. But this court agreed with Luther that the commission had failed to consider whether he was disabled when fired and whether his absenteeism had been caused by his industrial injury, stating that "[w]here the infraction that precipitated discharge is potentially due to industrial injury, further inquiry is necessary." *Id*. at ¶ 17, citing *Pretty Products* at 7-8.

{¶ 19} In *State ex rel. Reitter Stucco, Inc. v Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, the claimant was fired for making comments about the company's president while off work due to an industrial injury. The commission, applying *Pretty Products,* ordered that because the clamant had been temporarily and totally disabled when he was fired, temporary-total-disability compensation was not precluded. This court upheld the commission's decision. *Id*. at ¶ 12.

**{¶ 20}** Here, on the other hand, appellees argue that Hildebrand terminated his employment for reasons unrelated to his industrial injury; thus, his departure from employment (resulting in a loss of wages) was not causally related to his industrial injury—a requirement for temporary-total-disability compensation.

**{¶ 21}** We agree. Because Hildebrand failed to demonstrate that his loss of earnings was due to the industrial injury, he did not meet that requirement for receiving temporary-total-disability compensation. When determining an injured worker's eligibility for temporary-total-disability compensation, the initial focus is on whether the employee's departure from employment (resulting in a loss of earnings) was causally related to the allowed conditions of the claim. *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 35; *Ashcraft*, 34 Ohio St.3d at 44, 517 N.E.2d 533. If the injured worker leaves the workforce for reasons unrelated to the industrial injury, there is no loss of earnings due to the injury, and the employee is not eligible for temporary-total-disability compensation. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9.

**{¶ 22}** It is undisputed that evidence in the record supports that Hildebrand voluntarily quit his job following a disagreement with his employer that had nothing to do with his injury. This disagreement happened to occur shortly after he reported to work with a note from his doctor restricting him to modified duty. His departure was not causally related to the industrial injury. It was voluntary and broke the nexus between the injury and the unemployment; thus, he was not entitled to temporary-total-disability compensation. *Ashcraft* at 44.

**{¶ 23}** Furthermore, *Pretty Products* does not apply here. In *Pretty Products* and similar cases that followed, each injured worker was already receiving temporary-total-disability compensation when terminated from

employment and had therefore already demonstrated that he or she was disabled as a result of an industrial injury (which was the cause of a loss of earnings). *Pretty Products* held that a subsequent termination did not change that, so the disabled worker continued to be entitled to temporary-total-disability compensation despite having been terminated from employment.

{¶ 24} The court of appeals distinguished *Pretty Products* and related cases on the basis that they involved claimants who had been discharged, not claimants who had voluntarily quit. Hildebrand maintains that there is no distinction made between an employee who is terminated as a result of misconduct and one who voluntarily quits a job. *See State ex rel. Daniels v. Indus. Comm.*, 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 7. Nevertheless, *Pretty Products* has not been considered in the context of an injured worker who voluntarily quit for reasons unrelated to the allowed claim. This is most likely because a claimant who is being paid temporary-total-disability compensation while not working has little incentive to quit.

{¶ 25} In addition, it would be illogical to extend *Pretty Products* to a claimant who elects to leave a job—for reasons unrelated to the industrial injury—before the employer is afforded the opportunity to offer work within his medical restrictions. This would apply *Pretty Products* in circumstances beyond those contemplated in that case. Although Hildebrand had a doctor's note restricting him to modified duty, it was his decision to quit his job over a dispute about using his boss's Jeep that caused his loss of wages.

{¶ 26} Finally, the presence or absence of alternative employment is not dispositive here. Hildebrand argued that the commission also abused its discretion when it based its denial of temporary-total-disability compensation on speculation that his former employer might have offered him light-duty work. As the court of appeals determined, because Hildebrand quit his job for reasons not related to his allowed claim, whether or not the employer would have offered him

light-duty work is not crucial to the issue of temporary-total-disability eligibility. *See State ex rel. Santiago v. Indus. Comm.*, 10th Dist. Franklin No. 09AP-419, 2010-Ohio-1020 (an injured worker who returned to light-duty work was ineligible for temporary-total-disability compensation because he voluntarily abandoned his employment when he quit because of scheduling conflicts).

{¶ 27} Therefore, we agree with the court of appeals that the commission did not abuse its discretion when it relied on evidence that Hildebrand voluntarily abandoned his position for reasons unrelated to his industrial injury to deny his request for temporary-total-disability compensation, and we affirm the court's judgment.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents.

_____

**O'NEILL, J., dissenting**.

{¶ 28} I would grant the writ of mandamus. This case is another example of how the judicially created labyrinth of voluntary abandonment undermines Ohio's constitutional and statutory system of workers' compensation. *See State ex rel. Jacobs v. Indus. Comm.*, 139 Ohio St.3d 86, 2014-Ohio-1560, 9 N.E.3d 999 (O'Neill, J., dissenting); *State ex rel. Robinson v. Indus. Comm.*, 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 883 (O'Neill, J., dissenting). There is simply no evidence that Brian Hildebrand quit his job at Wingate Transport prior to being injured at work on June 3, 2009, or prior to appearing at the workplace on June 9, 2009. But there is ample evidence that he was escorted off the premises by the police on June 9, 2009.

{¶ 29} Hildebrand was a truck mechanic with a history of lower-back problems for which his industrial-injury claims had been allowed. The majority

of these claims, however, were medical only and Hildebrand had successfully returned to work following all of his previous claims. In other words, by his actions he demonstrated that he wanted to work. The staff hearing officer's report and the statement of facts prepared for the commission-level hearing both acknowledge the fact that Hildebrand was working six days per week during the year prior to his injury that gave rise to this claim. On June 3, 2009, Hildebrand was injured on the job while replacing a grease seal on a truck. He told his employer, Wingate Transport, that he was injured on the day it happened. On June 9, 2009, Hildebrand went to work with a note from his doctor indicating that he should be on modified duty for the following ten days. Jeffrey Wingate responded by telling him to relinquish the keys to the Jeep that he had been driving. An argument ensued. When Hildebrand asked whether he was being fired, Wingate said no. However, the exchange ended with Hildebrand being escorted off the property by the police. It would be nonsensical to characterize that encounter as anything short of a termination.

{¶ 30} This court has determined that the need to investigate the nature of the injured worker's separation from employment is eliminated when the injured worker was already disabled when the separation occurred. *State ex rel. Pretty Products, Inc. v. Indus. Comm.,* 77 Ohio St.3d 5, 7, 670 N.E.2d 466 (1996), citing *State ex rel. Brown v. Indus. Comm.,* 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). Surprisingly, and without any factual basis, this court has now departed from our own precedential case law.

{¶ 31} Hildebrand maintains that he was fired by Jeffrey Wingate on June 9, 2009. The employer, the Industrial Commission, and a majority of this court maintain that Hildebrand quit on June 9, 2009. The Industrial Commission appears to be relying on a finding made by a hearing officer of a wholly separate state agency, the Ohio Department of Job and Family Services, who determined that Hildebrand had quit for undisclosed personal reasons and was not eligible for

unemployment-compensation benefits. When did the Industrial Commission of Ohio establish a practice of abdicating its fact-finding duties to a hearing officer who had considered only whether a person was eligible for unemployment-compensation benefits and whose decision was not yet final? The majority opinion denying Hildebrand's eligibility for temporary-total-disability compensation turns on the fact that Hildebrand failed to demonstrate that his loss of earnings was due to the injury he sustained on June 3, 2009. But regardless of whether Hildebrand quit or was fired on June 9, 2009, the fact is that Hildebrand's workplace injury predated his separation from employment. That fact is undisputed. Thus, under *Pretty Products,* an investigation into the nature of Hildebrand's separation is not relevant to a determination of temporary total disability. The outcome here undermines the no-fault nature of our workers' compensation system in Ohio.

{¶ 32} Workers' compensation in Ohio is the result of an agreement and compromise between employers and employees. The reality is that unintended injuries happen in the workplace. Injured workers need medical treatment and wages while they heal, not to mention a job to return to. Nobody is served when a business is forced to close because it cannot afford to pay to defend a lawsuit that arises when an employee is injured at work. Ohio's system of workers' compensation flows from Article II, Section 35 of the Ohio Constitution. In its simplest terms, employers agreed to pay premiums to the state insurance fund. Workers agreed not to sue when they became injured at work. It is the Ohio Constitution that authorizes Ohio's workers' compensation statutes and administrative rules.

{¶ 33} The agreement is simple but, as the ocean of caselaw demonstrates, it is not easy. R.C. 4123.95 states that workers' compensation statutes are to be liberally construed in favor of employees. This court has stated that the requirement for liberal construction means that coverage decisions should tilt in

favor of awarding benefits. *Fisher v. Mayfield,* 49 Ohio St.3d 275, 278, 551 N.E.2d 1271 (1990). Workers' compensation is heavily regulated by statute and administrative rule. Certainly courts, and this court in particular, are crucial components in the system to resolve questions regarding the application and interpretation of statutes and rules. However, the concept of voluntary abandonment is purely a judicial construct that should be applied sparingly, if ever. And I would hold as a matter of law that you are not quitting your job when you are summarily marched off the premises of your employer by a police officer. I dissent.

_____

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., Theodore A. Bowman, and Gretchen T.H. Esselstein, for appellant.

Michael DeWine, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.

Barno Law, L.L.C., John C. Barno, Melissa A. Black, and Jamison S. Speidel, for appellee Wingate Transport, Inc.

_____