[Cite as *State v. Marcum*, 2025-Ohio-1122.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-072 |
| | : | O P I N I O N |
| - vs - | | 3/31/2025 |
| | : | |
| JACOB MARCUM, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. CRB2400511


Antoinette M. Dillard, City of Hamilton Assistant Law Director, for appellee.

Christopher P. Frederick, for appellant.



**HENDRICKSON, P.J.**

{¶ 1} Appellant, Jacob Marcum, appeals from his conviction in the Hamilton Municipal Court for obstructing official business. For the reasons discussed below, we affirm his conviction.

{¶ 2} On February 22, 2024, appellant was charged by complaint with one count of obstructing official business in violation of R.C. 2921.31, a misdemeanor of the second degree. Appellant entered a not guilty plea, and the matter proceeded to a bench trial.

{¶ 3} City of Hamilton Police Officer William Feck was the state's sole witness. Officer Feck testified that on February 22, 2024, he and other officers were dispatched to a home on Hooven Avenue in Hamilton, Butler County, Ohio in response to a 9-1-1 hang-up call. Once on scene, Officer Feck and the other officers observed through the home's windows that appellant, appellant's wife, Oumou Mhaimid, and two young children were inside the home. Officer Feck could hear arguing occurring inside the home. Officer Feck and his fellow officers tried to gain entry to the home to determine whether someone was in need of aid. The officers repeatedly knocked on the home's front and back doors and gave verbal commands for the occupants to open the door. On at least two occasions, Mhaimid approached the door as if to open it. However, each time she approached the door, Officer Feck heard a male inside the home raise his voice. Though Officer Feck could not make out the words the male voice was shouting, the shouting caused the female to retreat from the door without opening it. Officer Feck testified that his inability to get inside the home hampered or impeded the performance of his duties as he was unable to verify if any of the home's occupants were injured or being held against their will.

{¶ 4} Officer Feck and his fellow officers briefly spoke with appellant and Mhaimid through a cracked window on the side of the house. However, neither individual would comply with demands to open the front door or back door. Eventually, nearly 20 minutes after Officer Feck and his fellow officers arrived on scene, the officers broke down a door to gain entry to the home. At that time, appellant was arrested for obstructing official business.

{¶ 5} Officer Feck was wearing a body camera at the time of the incident. Recorded footage from his body camera was admitted into evidence without objection.

{¶ 6} Mhaimid testified on behalf of appellant's defense. Mhaimid claimed that

she had accidentally called 9-1-1. When the officers responded to her home, she claimed

she did not answer the door because she was not dressed. Mhamid denied that appellant

told her not to open the door to the officers.

{¶ 7} The trial court took the matter under advisement. On May 17, 2024, the trial

court found appellant guilty of obstructing official business. In finding appellant guilty, the

court stated the following:

> I took the matter under advisement. I went back and I listened to all the testimony, the audio recording of the testimony from the trial. And I reviewed the video evidence in the case, which was from the officer's body worn camera, which was admitted into evidence in this case.
>
> When the police arrived th[e] day of this incident, from the outside they could still hear the yelling and arguing going on between the Defendant and his wife who had made the 9-1-1 call.
>
> It wasn't clear whether she or her child or children were safe, because the Defendant would not open the door for the police to enter. And it was clear from the video evidence that the Defendant was refusing to let his wife open the door.
>
> . . .
>
> The wife's testimony in the case was clearly an attempt at trial to paint a different picture from what the incident is as shown on the video. Where on the video she is clearly starting to open the door and she stops when the Defendant yells at her.
>
> . . .
>
> In this case, the Defendant's purpose, and he achieved it, was to delay, impede and impair the police from finding out whether someone was injured in this house and needed assistance.
>
> And because of that, I'm finding him to be guilty.

The court proceeded to impose a sentence consisting of 90 days in jail, with 60 days

suspended, two years of community control, and a fine of $300.

{¶ 8} Appellant appealed his conviction, raising the following as his sole

assignment of error:

{¶ 9} [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Appellant argues the trial court erred in convicting him of obstructing official business as the weight of the evidence did not demonstrate that he "committed an affirmative act with purpose to impede police officers responding to a 911 call at his residence." Relying on Mhaimid's testimony, appellant argues Mhaimid personally made the decision, without any influence or direction from him, not to open the door for the officers.

{¶ 11} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id*., citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 12} Appellant was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." A person acts purposely "when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 13} "The offense of obstructing official business generally requires 'the doing of some affirmative act by a defendant.'" *State v. Jones*, 2016-Ohio-67, ¶ 20 (12th Dist.), quoting *State v. King*, 2007-Ohio-335, ¶ 58 (3d Dist.). "However, failing to act may still constitute obstruction of official business in certain circumstances." *State v. Florence*, 2014-Ohio-167, ¶ 30 (12th Dist.). "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform his lawful duties." *State v. Standifer*, 2012-Ohio-3132, ¶ 28 (12th Dist.). "[T]he state does not need to prove that the defendant successfully prevented an officer from performing his or her duties." *State v. Alexander*, 2017-Ohio-5507, ¶ 21 (12th Dist.). Rather, "[t]he state need only present evidence demonstrating a defendant interfered with the performance of an official duty and made it more difficult to perform." *State v. Schwartz*, 2023-Ohio-1424, ¶ 14 (12th Dist.).

{¶ 14} Having thoroughly reviewed the record in the present case, we find that appellant's conviction for obstructing official business is not against the manifest weight of the evidence. Officer Feck's testimony and footage from his body camera demonstrated that law enforcement were responding to a 9-1-1 hang-up call. Once on the scene, Officer

Feck heard arguing occurring inside the home. Officer Feck testified it was the Hamilton Police Department's policy to investigate a 9-1-1 hang-up call to make sure there were no injuries or that someone was not being held against his or her will. In an effort to verify that no one inside appellant's home needed aid, Officer Feck and his fellow officers knocked on the door and asked appellant and Mhaimid to open the door. On at least two occasions, Mhaimid approached the door as if to open it. However, each time she approached the door, appellant shouted something at her that caused her to retreat from the door without opening it. Appellant's refusal to open the door and his unwillingness to allow Mhaimid to open the door delayed the officers' investigation and resulted in the officers having to breach the home more than 20 minutes after their arrival. As Officer Feck explained at trial, his inability to get inside the home hampered or impeded the performance of his duties as he was unable to verify if any of the home's occupants were injured. *Accord State v. Jones*, 2016-Ohio-67 (12th Dist.) (finding a defendant's conviction for obstructing official business was not against the manifest weight of the evidence where officers were investigating a 9-1-1 pocket dial and the defendant refused to cooperate or allow officers into his residence to investigate whether an emergency existed).

{¶ 15} Mhaimid's testimony that appellant did not instruct her not to open the door and that she chose not to open the door on her own accord because she was not dressed is contradicted by Officer Feck's testimony and his body camera footage. Through the windowpane of appellant's back door, Officer Feck's body camera captured a dressed Mhaimid approaching the door, reaching forward as if to open the door, and then retreating when appellant yelled something at her. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 2011-Ohio-6529, ¶ 17 (12th Dist.). "[T]he trial court, as the trier of fact, is best able to view

witnesses and observe their demeanor, gestures, and voice inflections in weighing witness credibility . . . ." *State v. Burkhead*, 2009-Ohio-4466, ¶ 19 (12th Dist.). Here, the trial court did not find Mhamid to be a credible witness, noting that her testimony was "clearly an attempt . . . to paint a different picture from what the incident is as shown on the video."

{¶ 16} Accordingly, based on the evidence presented at trial, we find that appellant's conviction for obstructing official business was not against the manifest weight of the evidence. The weight of the evidence demonstrated that appellant obstructed and delayed officers in their duty to fully investigate a 9-1-1 hang-up call. Appellant's sole assignment of error is, therefore, overruled.

{¶ 17} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.