[Cite as *Middletown v. Goldberg*, 2017-Ohio-788.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| CITY OF MIDDLETOWN, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-06-122 |
| | : | O P I N I O N |
| - vs - | | 3/6/2017 |
| | : | |
| MICHAEL GOLDBERG, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. 15 CRB 04709-A


Leslie S. Landen, Middletown City Prosecutor, Ashley M. Bretland, One Donham Plaza, Middletown, Ohio 45042, for plaintiff-appellee

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Michael Goldberg, appeals his conviction in the Middletown Municipal Court for disorderly conduct.

{¶ 2} Goldberg is married to Kia Goldberg, who had other children from a previous relationship. Kia and her son, Ryan Brock, were estranged and had not spoken or seen each other in years. After Kia's father passed away, the family held a memorial barbeque at the

home of Kia's brother. Ryan attended the barbeque but Kia did not. After arriving at the barbeque, Ryan's sister, Clarissa, told Ryan that Goldberg had thrown Kia to the floor at their home. Ryan then had another sibling, Alex, drive him to his mother's home.

{¶ 3} Once there, Alex and another passenger stayed in the car while Ryan went to the door of his mother's apartment. Kia answered the door and told Ryan that she had not been hurt. Goldberg came to the door and approached Ryan, who had blocked the door with his foot. Although Goldberg told Ryan to leave, Ryan refused. At that point, Goldberg pushed Ryan and was near Ryan's face. Ryan started to return to the car, but Goldberg followed Ryan. Goldberg then grabbed Ryan by the throat and pinned him against the car. During this time, Goldberg was loud, aggressive, and agitated – telling Ryan that he was going to kill him.

{¶ 4} Ryan called 9-1-1, and waited for police. Police Officer Jordan Wagers was dispatched to the scene and spoke with Ryan upon arriving at Kia and Goldberg's apartment. Ryan told Officer Wagers that Goldberg was belligerent with him, pinned him against the car, grabbed him by the throat, and threatened to kill him. Officer Wagers then tried to speak to Goldberg, who told Officer Wagers that neither he nor his wife had any reason to talk to police. Goldberg then told Officer Wagers to leave. While Goldberg tried several times to slam the door shut, another officer, who had also arrived at the scene, put her foot in the door. Officers then tried to check on Kia's safety. Eventually, Officer Wagers placed Goldberg under arrest.

{¶ 5} While driving to the police station, Goldberg became belligerent toward Officer Wagers, screaming and yelling that he was going to find Officer Wagers' home and kill him. Goldberg continued this behavior once he arrived at the jail. Goldberg was charged by complaint with domestic violence and menacing. The complaint, titled Record of Arrest, was signed by Officer Wagers.

{¶ 6} Goldberg pled not guilty, and the matter proceeded to a bench trial. The state withdrew the menacing charge, and the trial court found Goldberg guilty of disorderly conduct, a lesser included offense of domestic violence. The trial court sentenced Goldberg to a fine and court costs. Goldberg now appeals his conviction, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PROCEEDED TO CONDUCT A TRIAL WHEN THERE WAS NO VALID COMPLAINT OR OTHER CHARGING INSTRUMENT.

{¶ 9} Goldberg argues in his first assignment of error that his complaint was invalid because it was not notarized.

{¶ 10} The filing of a valid complaint is a prerequisite to the municipal court obtaining subject-matter jurisdiction. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 21. Subject-matter jurisdiction cannot be waived or forfeited, and can be raised at any time. *Id.* at ¶ 10; Crim.R. 12(C)(2).[1]

{¶ 11} According to Crim.R. 3, "the complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths."

{¶ 12} While the complaint charging Goldberg with domestic violence and menacing was not notarized, it was nonetheless made upon oath before the deputy clerk of the Middletown Municipal Court, who was authorized to administer the oath required by Crim.R.

---

1. A valid complaint is one made in good faith, and with procedural due process in mind essentially providing notice. It does not mean it is free of any and all error or technically correct in all regards. Otherwise, we would have no use for rules which specifically permit amendment of complaints at any time during the proceedings. Crim.R. 7(D).

3. According to R.C.1901.31(E), "the clerk of a municipal court may do all of the following: administer oaths, take affidavits, and issue executions upon any judgment rendered in the court * * *." R.C.1901.31(H) provides, "each deputy clerk * * *, when so qualified, may perform the duties appertaining to the office of the clerk* * *."

{¶ 13} The complaint charging Goldberg with domestic violence and menacing references the two ordinances that prohibit domestic violence and menacing, and then contains a statement of facts to support the charges, including a description of Goldberg's actions against Ryan. The complaint is signed by Officer Wagers, and witnessed by the deputy clerk. The deputy clerk's signature appears on the complaint, as well as a statement that Officer Wagers' statement and signature were "sworn to before me and signed in my presence."

{¶ 14} As such, the complaint complied with Crim.R. 3 in that it included a statement of the essential facts constituting the offenses charged, it stated the numerical designation of the applicable statutes or ordinances, and it was made upon oath before the deputy clerk, who was authorized by law to administer oaths. *See State v. Taylor*, 12th Dist. Butler No. CA2014-02-040, 2015-Ohio-819, ¶ 11 (finding complaint valid where charging officer's oath was made before the deputy clerk, despite lack of notarization).

{¶ 15} Therefore, the complaint properly invoked the municipal court's jurisdiction, and Goldberg's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT CONVICTED HIM OF DISORDERLY CONDUCT.

{¶ 18} Goldberg argues in his second assignment of error that his conviction is not supported by sufficient evidence and was otherwise against the manifest weight of the evidence.

{¶ 19} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 20} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 21} "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 22} Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, a "determination that a conviction

is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 23} Goldberg was convicted of disorderly conduct in violation of Middletown Municipal Codified Ordinance 648.04-1, which provides, "(a) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:  (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

{¶ 24} During the bench trial, the state presented evidence, that when viewed in a light most favorable to the prosecution, proved that Goldberg committed disorderly conduct. Ryan testified first, and explained how he arrived at the barbeque honoring his late grandfather, and was told by his sister and brother that Goldberg had thrown their mother to the floor.  Ryan testified that when he arrived at his mother's apartment, Goldberg came to the door and pushed him when Ryan tried to see if his mother was safe.  According to Ryan's testimony, Goldberg was "standing in [his] face," and telling him to leave.  Goldberg followed Ryan to the car, where he grabbed Ryan by the throat and held him against the car.  Ryan described Goldberg's demeanor as "very loud and aggressive."  Ryan also testified that Goldberg threated his life, stating that "he was going to kill me."

{¶ 25} Officer Wagers also testified, and stated that he was dispatched to the Goldbergs' apartment based on Ryan's 9-1-1 call. Officer Wagers testified that Ryan told him that Goldberg had been belligerent and had threatened his life after grabbing his throat. After Officer Wagers spoke with Ryan, he and another officer tried to speak with Goldberg but Goldberg was "extremely belligerent, cussing towards us, saying that we didn't have any reason to be at the residence, we didn't have any reason to talk to him or his wife, that we needed to leave." Officer Wagers also testified that Goldberg tried to slam the door on him and the other officer multiple times, but that the other officer had put her foot in the door to

keep it open long enough to check on Kia's safety.

{¶ 26} Officer Wagers testified that the officers then placed Goldberg under arrest and that during the transport to the police station, Goldberg continued his belligerent behavior. Specifically, Goldberg was screaming, yelling, and threatening Officer Wagers, and Goldberg told Officer Wagers that he was going to find Officer Wagers' house and kill him. Officer Wagers also testified that Goldberg told him that he was going to "kick my, the 'A' word or butt or whatever you want to say."

{¶ 27} In his defense, Goldberg called Kia, who testified that she never saw Goldberg touch Ryan in any way. Kia also testified that Goldberg never pushed Ryan, never threatened him, and that she only saw the two men arguing. Goldberg also called Ryan's brother, Alex, who testified that he drove Ryan to their mother's apartment on the night in question. Alex testified that he stayed in the car, that he saw Ryan and Goldberg arguing, but that he did not observe Goldberg touch or threaten Ryan.

{¶ 28} While there was contradictory testimony offered regarding Ryan and Goldberg's interactions, the trial court was in the best position to judge the witness' credibility. Moreover, Goldberg did not offer any testimony or evidence that his behavior while in Officer Wagers' car was not belligerent or that he did not threaten Officer Wagers' life. When viewed in a light most favorable to the prosecution, we find that Goldberg's conviction was supported by sufficient evidence, and was not against the manifest weight of the evidence. As such, Goldberg's second assignment of error is overruled.

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT PROVIDE HIM THE OPPORTUNITY FOR ALLOCUTION.

{¶ 31} Goldberg argues in his final assignment of error that the trial court erred by not providing him an opportunity for allocution before pronouncing sentence.

{¶ 32}   As this court has stated previously, "Crim.R. 32 does not merely give the defendant a right to allocution; it imposes an affirmative requirement on the trial court to ask if he or she wishes to exercise that right." *State v. Larios*, 12th Dist. Preble No. CA2009-07-019, 2012-Ohio-4525, ¶ 21.  As a result, the "requirement of allocution is considered fulfilled when the conduct of the court clearly indicates to the defendant that he has a right to make a statement prior to the imposition of sentence." *State v. Wesley*, 12th Dist. Butler No. CA2015-04-077, 2015-Ohio-5031, ¶ 25.  Crim.R. 32(A)(1) also requires the trial court to afford "counsel an opportunity to speak on behalf of the defendant."  "In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." *State v. Campbell*, 90 Ohio St.3d 320, 326 (2000).

{¶ 33}   Immediately after announcing its guilty finding, the trial court had two people standing before it:  Goldberg and Goldberg's attorney.  At that time, the trial court asked twice if there was anything to be said.  First, the trial court stated, "Anything you want to say?" and although the court did not state counsel's name, the record indicates the court inquired of Goldberg's counsel.  The trial court then turned to Goldberg inquiring if he had anything he wanted to say.  While Goldberg's counsel offered no response, Goldberg himself ignored his opportunity for allocution, deciding instead to contest the trial court's guilty finding.  Goldberg repeated the arguments as to why he should not be found guilty of disorderly conduct.  The trial court attempted to reiterate that there was sufficient evidence offered at trial to support the guilty finding.

{¶ 34}   Goldberg continued to argue with the court and chose to assert his innocence rather than offer any allocution.  While a defendant does not waive the right to allocution by not objecting, a defendant can waive the right once given the opportunity to address the

- 8 -

court. *See Campbell* at 325 ("Of course, once the trial court has asked the defendant if he or she wishes to speak an allocution, he or she may waive the right to do so"). Once the trial court gave Goldberg the opportunity to address the court with allocution, Goldberg then waived that right by arguing his innocence rather than speaking in mitigation.

{¶ 35} Similarly, and regarding counsel's right to offer mitigation for his client, we find no reversible error. Trial counsel was given the opportunity to address the court and instead his client contested the trial court's guilty finding. Goldberg's counsel did not take advantage of the invitation to address the court. In regard to allocution, the Ohio Supreme Court has noted that where counsel "was actively responsible" for any failure in addressing the court, such would be considered invited error. *Id.* at 324. The court is obligated to inquire or ask for input, but cannot make the defendant or counsel participate. While counsel could have attempted to mitigate his client's continued argument with the court and in mitigation of punishment, counsel's lack of dialogue was harmless where counsel was actively responsible for his lack of response. *Id.*

{¶ 36} After both were invited to say something, Goldberg himself waived his opportunity to address the court in mitigation while his counsel stood silent. The Ohio Supreme Court has recognized the failure of allocution "is not prejudicial in every case." *Id.* at 325. Although counsel did not respond, Goldberg spoke up, choosing a different discussion than mitigation. The lack of appropriate dialogue is not the fault of the court, but rather the result of waiver on the part of Goldberg and invited error on the part of his counsel. Furthermore, no prejudice being demonstrated, any error if existing, is considered harmless. Having found no reversible error, Goldberg's final assignment of error is overruled.

{¶ 37} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

- 9 -