[Cite as *State v. Walston*, 2019-Ohio-1699.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-04-068 |
| | : | O P I N I O N |
| - vs - | | 5/6/2019 |
| | : | |
| MARY WALSTON, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM THE HAMILTON MUNICIPAL COURT
Case No. 17CRB04952


Thomas A. Dierling, City of Hamilton Prosecuting Attorney, 345 High Street, Hamilton, Ohio 45011, for appellee

Repper-Pagan Law, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for appellant


**PIPER, J.**

{¶ 1} Appellant, Mary Walston, appeals from her conviction in the Hamilton Municipal Court for one charge of failing to confine or control a dog.

{¶ 2} On November 8, 2017, Kurt Merbs, a Butler County Dog Warden, responded to a call that a puppy was attacked in Hamilton, Ohio. Upon arrival, Merbs met Nicholas Feazel, the owner of the injured puppy. Feazel indicated he and his puppy were in his

backyard when Walston's dog jumped Walston's fence, came through Feazel's fence, and attacked him and his puppy. Merbs observed puncture wounds and a protrusion on the puppy, and noted that it was in need of medical attention. After Feazel left for the animal hospital, Merbs looked in Walston's backyard and observed two border collies.

{¶ 3} Walston was not home the day of the incident, but subsequently met with Merbs at his office on November 14, 2017. At that meeting, Walston indicated the dog in question belonged to her daughter, and that Walston was watching it while her daughter was out of town. Merbs then issued Walston a citation for failure to confine or control a dog in accordance with R.C. 955.22(C).

{¶ 4} A hearing was held and Walston entered a not guilty plea. The court later issued a judgment entry finding Walston guilty of failing to restrain the dog in violation of R.C. 955.22(C). Appellant was sentenced to two years of community control, fined $100 plus fees and court costs, and ordered to pay restitution of $5,182.03. Walston timely filed a notice of appeal. Thereafter, Walston motioned this court for a limited remand related to the jurisdictional facts within Walston's citation. We granted the motion, and a hearing was held to supplement the record.

{¶ 5} Walston appeals her conviction, raising two assignments of error for our review. Assignment of Error No. 1:

{¶ 6} THE COURT LACKED SUBJECT-MATTER JURISDICTION.

{¶ 7} In her first assignment of error, Walston argues the municipal court lacked subject-matter jurisdiction over this matter because the complaint was defective under Crim.R. 3.

{¶ 8} Subject-matter jurisdiction involves a court's power to hear a case. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 10. As a result, "the issue can never be waived or forfeited and may be raised at any time." *Id.* The filing of a valid complaint is a

necessary prerequisite to a municipal court's acquisition of subject-matter jurisdiction. *Id.* at ¶ 12; *State v. Dees*, 12th Dist. Butler No. CA2015-09-166, 2016-Ohio-2772, ¶ 7.

{¶ 9} Crim.R. 3 defines what constitutes a valid complaint. *Mbodji* at ¶ 12. Crim.R. 3 requires a complaint to contain "a written statement of the essential facts constituting the offense charged," "state the numerical designation of the applicable statute or ordinance," and "be made upon oath before any person authorized by law to administer oaths."

{¶ 10} After Walston moved this court for a limited remand to the municipal court, a hearing was held to supplement the record. At that hearing, the parties stipulated to the following facts: Merbs was unable to make contact with Walston on November 8, 2017, the date of the incident. The two made contact on November 14, 2017, whereupon Merbs served Walston with a citation, which was then signed by both Merbs and Walston. After their meeting, Merbs "returned to his office and provided the citation to his administrative staff, and at that time the document was notarized by a Notary that is no longer employed." While notarizing the document, the Notary erroneously put the date of the offense, November 8, 2017, rather than the date the citation was delivered to Walston, November 14, 2017.

{¶ 11} Here, Walston's argument rests on a comparison of the complaint provided to Walston on November 14, 2017, and the complaint filed with the municipal court. Specifically, the copy provided to Walston contains Merbs' signature and the filed copy is witnessed by the Notary's signature. As such, Walston contends that the complaint is not valid because it was not signed in the presence of a notary. We disagree.

{¶ 12} The Ohio Supreme Court has recognized that "[a] jurat is not part of an affidavit, but is simply a certificate of the notary public administering the oath, which is prima facie evidence of the fact that the affidavit was properly made before such notary." *Stern v. Bd. of Elections of Cuyahoga Cnty.*, 14 Ohio St. 2d 175, 181 (1968). "Crim.R. 3 does not contain any express reference to the presence of a jurat in a complaint; instead, as to the

- 3 -

'oath' requirement, the rule only states that the complaint must be made under oath before a person who has the power to administer the necessary oath." *State v. Davies*, 11th Dist. Ashtabula No. 2012-A-0034, 2013-Ohio-436, ¶ 24. As such, even if the jurat is defective, "the validity of the complaint can still be upheld if the prosecution can otherwise show, based upon other language in the document or evidence outside the record, that a proper oath was administered by a person duly authorized to take the oath." *City of Miamisburg v. Rinderle*, 2d Dist. Montgomery No. 26094, 2015-Ohio-351, ¶ 5. Notably, "[i]n the ordinary case the fact that the complaint is under oath is shown by the signature of the officer administering the oath." *Davies* at ¶ 25.

{¶ 13} According to the record, the complaint indicates that a proper oath was administered to Merbs and that he swore to the complaint after the date of Walston's offense. The presence of Merbs' signature on the complaint prior to its notarization does not suggest that the oath was not duly administered by the Notary. Rather, the record reflects that the Notary signed the document verifying the complaint and/or affidavit were sworn under oath by Merbs in her presence. While the date was inaccurate, the parties stipulated that the Notary made a typographical error, and the complaint was in fact notarized on November 14, 2017. Moreover, there is no evidence in the record that the Notary did not administer the oath to Merbs, as attested to within the complaint. Accordingly, in light of the Notary's signature and seal, the record supports that the complaint was made under oath before a person who has the power to administer the necessary oath and therefore, satisfies Crim.R. 3.

{¶ 14} We also reject Walston's argument that the complaint failed to sufficiently allege that Walston violated R.C. 955.22(C). "The purpose of a criminal complaint is to inform the accused of the identity and essential facts constituting the offense charged." *State v. Stefanopoulos*, 12th Dist. Butler No. CA2011-10-187, 2012-Ohio-4220, ¶ 21. A complaint

is not defective because it fails to allege a specific statutory subsection, so long as the substance of the complaint is sufficient to inform the accused of the charges against her. *State v. Doans*, 12th Dist. Butler No. CA2007-10-258, 2008-Ohio-5423, ¶ 8. While the exact statutory language does not have to be expressed, language equivalent to the crime's essential elements must be present. *State v. Florence*, 12th Dist. Butler No. CA2013-08-148, 2014-Ohio-2337, ¶ 22.

{¶ 15} Walston was generally charged with violating R.C. 955.22(C). Pursuant to R.C. 955.22(C)(1), "no owner, keeper, or harborer of any dog shall fail to * * * [k]eep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape[.]"

{¶ 16} The complaint states: "The undersigned being duly sworn, upon his oath, deposes and says that the person whose name is indicated above, [Walston,] being the owner, keeper, or harborer of a" black and white female border collie at Carmen Avenue on "November 8, 2017 at 2:25 pm in Hamilton, Butler County, Ohio did unlawfully violate [R.C.] 955.22(C) – Failure to keep dog either physically restrained by a leash, tether, adequate fence, supervision, or secure enclosure upon the premises. Failure to Confine or Control a Dog or Nuisance Dog."

{¶ 17} Based on the above language, we find the complaint's substance was sufficient to inform Walston that she was charged with a violation of R.C. 955.22(C)(1). Specifically, the complaint used language to describe Walston's unlawful conduct which followed the language of R.C. 955.22(C)(1). Additionally, it informed Walston of the essential facts constituting the offense charged and each of the essential elements were present in the complaint. Under such circumstances, the exact statutory language is not required. *Doans* at ¶ 9; *State v. Broughton*, 51 Ohio App.3d 10, 11 (12th Dist.1988).

{¶ 18} Accordingly, we find the complaint adequately invoked subject-matter

jurisdiction in the municipal court, and Walston's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} WALSTON'S CONVICTION WAS UNLAWFUL.

{¶ 21} In her remaining assignment of error, Walston argues that her conviction is not supported by sufficient evidence, and was therefore unlawful.

{¶ 22} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} The complaint states Walston, "being the owner, keeper, or harborer of [the] dog," violated R.C. 955.22(C). In Ohio, the terms "owner," "keeper," and "harborer" are separately defined. *Thompson v. Irwin*, 12th Dist. Butler No. CA97-05-101, 1997 Ohio App. LEXIS 4728, *5 (October 27, 1997). The owner is the person to whom the dog belongs, and the keeper is the one having physical charge or care of the dog. *Id.* A "harborer" is one who has possession and control of the premises where the dog lives and silently acquiesces to the dog's presence. *State v. Chambers*, 12th Dist. Butler No. CA2010-06-136, 2011-Ohio-1187, ¶ 9.

{¶ 24} In this matter, Walston argues the state failed to present sufficient evidence that Walston harbored the dog and that her fence was inadequate to confine the dog. At the hearing, Feazel testified that he observed the dog, which was not restrained or tethered in any way, run through the bottom rail of his fence and attack his puppy. He recognized the

dog as Walston's larger border collie. At that time, Feazel ran up to the dog and it momentarily ran away. Seconds later, the dog returned and attempted to attack the puppy again. Feazel shoved the dog away, causing the dog to bite his hand before it returned to Walston's yard.

{¶ 25} The state then presented testimony from Merbs, the dog warden who investigated the attack. Merbs testified that he interviewed Feazel shortly after the attack, and that Feazel described the attacking dog as Walston's "bigger dog." While at the scene, Merbs observed two border collies in Walston's backyard, one slightly larger than the other. Merbs further testified that during his meeting with Walston, he explained the accusations. According to Merbs, Walston was cooperative and indicated that the dog in question belonged to her daughter. She further explained that although she watched the dog "quite a bit" while her daughter travelled, it lived in Michigan with her daughter. Ultimately, Merbs issued Walston a citation and advised her that the dog should remain in Michigan.

{¶ 26} In her defense, Walston confirmed that at the time of the incident, she was watching the dog while her daughter was out of town for two weeks. She further admitted the dog was kept in the fenced in area of her backyard, with access to her home's garage for food, water, and shelter from the yard, and that it was in the backyard the day of the accident. Notably, Walston testified, with support from her daughter's testimony, photographs, and videos, that the dog could not jump high enough to clear her fence and that it was out of character for the dog to behave aggressively. As such, Walston contended the scenario described by Feazel was not believable.

{¶ 27} After a thorough review of the record, we find the evidence sufficient to establish the state's prima facie showing that Walston was the keeper of the dog in question, and that Walston failed to keep the dog physically confined or restrained upon her property. Specifically, the state presented testimony that if believed, established Walston was

responsible for watching the dog and that she provided it with food, water, and shelter while her daughter was away. As such, we find Walston had physical charge or care of the dog while the daughter was out of town. While Walston contends the state based the charge upon Walston's classification as a "harborer" of the dog, the complaint indicates Walston was charged as the "owner, keeper, or harborer" of the dog. The testimony at the hearing demonstrated Walston was the keeper of the dog in question, and therefore exposed Walston to criminal liability.

{¶ 28} Furthermore, the testimony, if believed, established the dog was not tethered or restrained, and escaped from Walston's backyard while she was not home, despite the fencing she had in place. While Walston called into question the believability of Feazel's story, she did not present any evidence to contradict his first-hand observations of the attack, or his testimony that the larger border collie escaped to his backyard. Accordingly, due to the dog's apparent ability to escape, Walston failed to comply with the requirements of R.C. 955.22(C).

{¶ 29} In light of the above, we conclude that the evidence is sufficient to support Walston's conviction and Walston's second assignment of error is overruled.

{¶ 30} Having found Walston's final assignment of error without merit, we hereby affirm Walston's conviction for failing to restrain a dog.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.