[Cite as *State v. Conley*, 2026-Ohio-975.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-06-073 |
| vs. | : | OPINION AND JUDGMENT ENTRY 3/23/2026 |
| MICHAEL CONLEY, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. CRB 2302978

Ashley M. Bretland, City of Middletown General Counsel, and Zachary A. Barnhart, Assistant General Counsel, for appellee.

Repper-Pagan Law, and Christopher J. Pagan, for appellant.

**O P I N I O N**

**M. POWELL, J.**

{¶ 1} Michael Conley appeals from his conviction in the Butler County Court of Common Pleas after successfully petitioning this court to reopen his direct appeal. Because we conclude that the trial court lacked subject-matter jurisdiction, we reverse

Conley's conviction.

## I. Factual and Procedural Background

{¶ 2}   On the evening of November 10, 2023, at approximately 7:40 p.m., Conley was arrested and charged with one count of fourth-degree misdemeanor failure to disclose his personal information in violation of Middletown Cod.Ord. 606.30(a)(1). The charge stemmed from allegations that Conley, while seated in his vehicle parked on a public street outside a woman's residence in Middletown, Ohio, refused to provide his name, address, or date of birth when requested to do so by Middletown Police Officer Ryun Rawlins.

{¶ 3}   The circumstances precipitating Officer Rawlins's request are as follows. Dispatch received two successive 9-1-1 calls from a female resident reporting a suspicious man sitting in a vehicle parked outside her home with the headlights extinguished. The resident placed these calls after Conley had allegedly directed her to "come here" while she was letting her dog out the front door. Unfamiliar with Conley and unnerved by this interaction, the woman contacted 9-1-1, expressing fear and anxiety about his presence and conduct.

{¶ 4}   The charging instrument was prepared by Officer Rawlins and titled a "Statement of Facts." The document recounts the circumstances of Conley's arrest but labels the offense generically as "Failure to identify" without citing any specific statutory or ordinance provision. The Statement bears Officer Rawlins's signature on a line marked "Officer Signature (Complaining Witness)" and Sergeant Trey Porter's signature on a line marked "Approving Supervisor." A notary stamp appears beside these signatures, identifying Sergeant Porter as a notary public. Yet the document contains no jurat, no attestation that the complaint was "sworn to" or "subscribed before" the notary, and no signature by the notary acting in that official capacity. Stapled to this Statement was a

separate "Record of Arrest" that does identify the charged ordinance numerically.

{¶ 5}   The case proceeded to a one-day jury trial on May 9, 2024. The State presented recordings of both 9-1-1 calls and testimony from the arresting officer, Officer Rawlins, and Conley himself. The jury found Conley guilty. The trial court immediately proceeded to sentencing, imposing a sentence of 30 days in jail, suspended, plus a $250 fine and court costs.

{¶ 6}   Conley timely appealed, raising a single assignment of error. He challenged the sufficiency and manifest weight of the evidence, arguing that Officer Rawlins lacked reasonable suspicion that Conley was committing, had committed, or was about to commit a criminal offense, which is an element of the failure-to-disclose-personal-information offense. This court overruled that assignment of error and affirmed the conviction. *State v. Conley*, 2025-Ohio-136 (12th Dist.).

{¶ 7}   On April 21, 2025, Conley filed an application to reopen his appeal under App.R. 26(B), alleging ineffective assistance of appellate counsel. Conley contended that his appellate counsel had been constitutionally deficient in failing to challenge the trial court's subject-matter jurisdiction based on deficiencies in the complaint. On August 5, 2025, we granted the application. We concluded that Conley had demonstrated a genuine issue as to whether a colorable claim existed that the complaint failed to satisfy Crim.R. 3. The present reopened appeal followed.

**II. Analysis**

{¶ 8}   App.R. 26(B) provides a mechanism for defendants to reopen a direct appeal based on ineffective assistance of appellate counsel. The rule establishes a two-stage procedure for applicants seeking to reopen their direct appeals. *See State v. Leyh*, 2022-Ohio-292, ¶ 19. The applicant first must demonstrate that a genuine issue exists, that is, he must present legitimate grounds establishing that he was denied the effective

assistance of counsel on appeal. *Id.* at ¶ 25, citing App.R. 26(B)(5). Only if the applicant makes this threshold showing, and only if the court grants the application, does the matter proceed to the second stage. *Id.* There, the applicant must establish the merits of both his underlying direct appeal *and* his claim that appellate counsel performed ineffectively. *Id.*, citing App.R. 26(B)(9).

{¶ 9} Conley has invoked this procedure and now, at the second stage, he advances two assignments of error. The first argues that the trial court lacked subject-matter jurisdiction because the complaint failed to comply with Crim.R. 3. The second assignment of error argues that his appellate counsel performed ineffectively by failing to raise this jurisdictional challenge.

**A. The Complaint Fails to Comply with Crim.R. 3**

{¶ 10} The first assignment of error alleges:

THE TRIAL COURT LACKED JURISDICTION IN THE CASE.

{¶ 11} In his first assignment of error, Conley argues that the trial court lacked subject-matter jurisdiction to convict him because the charging instrument failed to comply with the requirements of Crim.R. 3. Specifically, he contends the complaint is defective in three respects: it omits essential elements of the offense of failure to disclose personal information, it fails to include the numerical designation of the ordinance, and it was not made upon oath before an authorized official.

**1. Standard of Review**

{¶ 12} Subject-matter jurisdiction concerns a court's power to hear and decide a case. *State v. Harper*, 2020-Ohio-2913, ¶ 23. Because this authority is fundamental to the court's legitimacy to act, it can "never be waived or forfeited and may be raised at any time." *State v. Mbodji*, 2011-Ohio-2880, ¶ 10.

{¶ 13} A trial court acquires subject-matter jurisdiction only upon the filing of a valid

complaint. *Id.* at ¶ 12. Whether a complaint satisfies the requirements of Crim.R. 3 presents a question of law that we review de novo. *State v. Hoerig*, 2009-Ohio-541, ¶ 12 (3d Dist.); *Parma v. Mentch*, 2014-Ohio-5690, ¶ 12 (8th Dist.).

### 2. Requirements of Crim.R. 3

{¶ 14} Crim.R. 3(A) establishes three requirements for a valid criminal complaint. The rule provides: "The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths." Accordingly, a valid complaint must have these three components: (1) allege the facts that constitute the essential elements of the charged offense; (2) state the numerical designation of the ordinance or statute; and (3) be made upon oath before any person authorized by law to administer oaths. *State v. Schuler*, 2019-Ohio-1585, ¶ 21 (12th Dist.). A complaint that meets the requirements of Crim.R. 3 invokes the trial court's subject-matter jurisdiction. *Mbodji* at syllabus.

### 3. The Complaint in This Case

{¶ 15} Before analyzing whether the charging instrument, the complaint, satisfies Crim.R. 3, we must first identify the documents it comprises. The State contends that the Statement of Facts and the Record of Arrest together constitute the complaint. Conley maintains that only the Statement of Facts functions as the complaint and that the Record of Arrest is merely an administrative document.

{¶ 16} The record reflects that a Record of Arrest was stapled to the Statement of Facts. The Statement of Facts, however, contains no language incorporating or referencing the Record of Arrest. Nor, for that matter, does the Record of Arrest contain language incorporating or referencing the Statement. At least one Ohio appellate court has said that a complaint can incorporate other documents but only through express

language. *Mentch*, 2014-Ohio-5690, at ¶ 17 (8th Dist.) (recognizing that police incident reports may satisfy sufficiency requirements when "referred to, attached to, and filed with the complaints," but finding mere reference to a police report number insufficient). We think that rule makes sense and adopt it here. Without a requirement of express incorporation, any document that happened to be stapled to a complaint could become part of the charging instrument, whether a booking sheet, a Miranda form, or a property inventory. The resulting uncertainty about the scope of the charges would undermine the very notice function that Crim.R. 3 is designed to serve.

{¶ 17} Accordingly, we agree with Conley's characterization. The Record of Arrest is styled as precisely what its name suggests: a record of arrest. It contains booking information, jail placement details, a booking number, and a box indicating the "legal basis" for booking was "original charges/narrative," thus referring to another document as the charging instrument. Nothing in the Record of Arrest identifies it as a complaint or indicates it was intended to serve as one. We conclude that the Statement of Facts alone constitutes the complaint in this case.

{¶ 18} We note at the outset, however, that even if the Record of Arrest and Statement of Facts together comprised the complaint, the analysis below would yield the same result. The Record of Arrest supplies a numerical ordinance designation, so treating the two documents as a single complaint would cure the numerical-designation deficiency. But the Record of Arrest contains no oath language and bears no jurat. Combining it with the Statement of Facts therefore does nothing to cure the oath deficiency, which independently deprives the trial court of jurisdiction. We discuss this in greater detail below.

### 4. Essential Elements

{¶ 19} Conley first argues that the complaint fails to allege the essential elements

of the offense of failure to disclose personal information.

{¶ 20} "The primary purpose of a criminal complaint is to provide the accused with notice as to the nature of the charges against him." (Citations omitted.) *Hoerig*, 2009-Ohio-541, at ¶ 14 (3rd Dist.). "A complaint sufficiently charges an offense when all the elements constituting the offense charged are sufficiently set forth and nothing therein contained is ambiguous." (Cleaned up.) *Id.* The "'essential elements of a given offense are those facts which must be proven to obtain a conviction of the accused.'" *Schuler*, 2019-Ohio-1585, at ¶ 22 (12th Dist.), quoting *State v. Jones*, 2011-Ohio-5109, ¶ 16 (11th Dist.). "While all specific facts relied upon to sustain the charge need not be recited, the material elements of the crime must be stated." (Cleaned up.) *Id*. "A complaint is deemed sufficient if an individual of ordinary intelligence would not have to guess as to the type and scope of the conduct prohibited." (Cleaned up.) *State v. Sallee*, 2012-Ohio-3617, ¶ 8 (6th Dist.).

{¶ 21} Middletown Cod.Ord. 606.30(a) provides:

> No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following:
>
> (1) The person is committing, has committed, or is about to commit a criminal offense.
>
> (2) The person witnessed any of the following: [various serious offenses]

Conley contends the complaint here, the Statement of Facts, alleges only a request for information and his refusal. It does not allege that Officer Rawlins reasonably suspected Conley of criminal activity.

{¶ 22} The reasonable-suspicion requirement is constitutionally essential. *See State v. Fulton*, 2024-Ohio-2880, ¶ 9 (1st Dist.) (interpreting the parallel state provision,

R.C. 2921.29[A][1]).[1] Absent reasonable suspicion, the State would transform what should be a consensual encounter into a criminal prosecution, punishing a citizen for nothing more than exercising the right to remain silent. *See id.*; *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 23} In our original opinion, we recognized that the Middletown ordinance incorporated this reasonable-suspicion element. We held that the evidence satisfied this standard because the totality of circumstances—most notably, the dispatch calls reporting harassing conduct—gave rise to reasonable suspicion that Conley was engaged in disorderly conduct of some kind. *Conley*, 2025-Ohio-136, at ¶ 19 (12th Dist.). When Officer Rawlins first approached Conley sitting in his parked car outside the complainant's home, the officer possessed reasonable suspicion that Conley was committing, had committed, or was about to commit a criminal offense, based on the information dispatch had provided. *Id*.

{¶ 24} Turning to the complaint, the Statement of Facts recounts that officers responded to a "call for service" regarding an "unknown" vehicle parked outside a residence. The complainant reported that Conley had rolled down his windows and said to her, "come here," and that she declined to approach his vehicle. This account describes, in other words, officers responding to a harassment complaint about an unwanted individual. The Statement goes on to describe Conley's refusal to provide identifying information when asked during the investigation. Taken together, the reference to a report of harassment and the factual narrative of the investigation adequately apprised Conley of the charge's nature. The complaint alleged conduct sufficient to

---

1. As we said in our original opinion, "The wording set forth in Middletown Cod.Ord. 606.30(a)(1) is identical to the wording provided for in R.C. 2921.29(A)(1). Therefore, given their identical wording, case law discussing the latter is relevant . . . ." *Conley*, 2025-Ohio-136, at ¶ 17, fn. 2.

support reasonable suspicion of criminal activity. Specifically, it alleged a report of harassing behavior that warranted police investigation. *Id*. at ¶ 19 (reasonable suspicion of "any number of the harassing type crimes found in the Ohio Revised Code").

{¶ 25} To be sure, the Statement of Facts does not expressly allege that the officer reasonably suspected Conley was committing, had committed, or was about to commit a criminal offense. This presents a close question, and prudent prosecutors should draft charging instruments with greater specificity. But in this case, we are satisfied that a person of ordinary intelligence would understand the type and scope of conduct at issue. *See Sallee*, 2012-Ohio-3617, at ¶ 8 (6th Dist.).

**5. Numerical Designation**

{¶ 26} The essential-elements inquiry is, at bottom, a question about notice. It asks whether the factual allegations in the complaint would allow a person of ordinary intelligence to understand the charge. But Crim.R. 3 imposes two additional requirements that serve a different function. The numerical-designation and oath requirements are formal prerequisites whose satisfaction, or failure, is assessed from the face of the document rather than by inference from the surrounding narrative. That a person of ordinary intelligence might glean the nature of the charge from the factual narrative does not excuse the absence of these formal requisites. The numerical designation ensures that the defendant, the court, and the State are all operating under the same understanding of the specific statutory or ordinance provision at issue. And the oath requirement, as we explain in the next section, ensures the accountability and reliability of the allegations.

{¶ 27} With that framework in mind, we turn to Conley's argument that the complaint fails to include the numerical designation of Middletown Cod.Ord. 606.30, the ordinance under which he was charged.

{¶ 28} Crim.R. 3(A) provides, in mandatory terms, that a complaint "shall also state the numerical designation of the applicable statute or ordinance." The Statement of Facts here contains no numerical designation whatsoever. It does not cite Middletown Cod.Ord. 606.30, R.C. 2921.29, or any other provision. Instead, the Statement labels the offense generically as "Failure to identify."

{¶ 29} That mislabeling compounds the problem. "Failure to identify" does not correspond to any offense in Ohio law. *See* R.C. Chapter 2921 (containing no offense by that name). The actual charge was failure to disclose personal information under a specific municipal ordinance. By using a label that does not match any existing statutory or municipal offense, the Statement of Facts provided affirmatively misleading information rather than merely incomplete notice. A defendant attempting to look up "Failure to identify" in the Revised Code or the Middletown codified ordinances would find nothing.

{¶ 30} We acknowledge that this conclusion sits in some tension with our resolution of the essential-elements inquiry. After all, we found the factual narrative adequate to apprise Conley of the nature of the charge. But essential-elements sufficiency and numerical-designation compliance ask different questions. The former looks to whether the complaint's factual content communicates the gist of the accusation. The latter asks whether the complaint identifies, on its face, the specific legal provision at issue. The Ohio Supreme Court has identified all three Crim.R. 3 requirements as components of what constitutes a valid complaint for jurisdictional purposes, *Mbodji*, 2011-Ohio-2880, at ¶ 12, and this court's decision in *Schuler,* 2019-Ohio-1585, at ¶ 21, confirmed the same three-part test.

{¶ 31} The State concedes that the Statement of Facts lacks a numerical designation but argues that the Record of Arrest contains this information and should suffice. For the reasons stated above, we have concluded that the Record of Arrest is not

part of the complaint. The defendant must be provided reasonable notice of the specific offense charged within the complaint itself. The absence of any numerical designation in the Statement of Facts means that the complaint is deficient in this respect.

### 6. The Oath Requirement

{¶ 32} Conley's strongest argument concerns the oath requirement. The complaint, he contends, fails to satisfy Crim.R. 3 because it bears only an acknowledgment, not a jurat, and was never sworn before a proper official. The State responds that Sergeant Porter's notarized signature, coupled with language indicating that the approving supervisor attests to the officer's veracity, demonstrates that the complaint was made under oath as required.

### a. The Legal Framework

{¶ 33} Crim.R. 3(A) requires that a complaint "be made upon oath before any person authorized by law to administer oaths." The Ohio Supreme Court has recognized that "[a] jurat is not part of an affidavit, but is simply a certificate of the notary public administering the oath, which is prima facie evidence of the fact that the affidavit was properly made before such notary." *Stern v. Bd. of Elections of Cuyahoga Cty.*, 14 Ohio St. 2d 175, 181 (1968). A jurat is merely a certificate establishing "that the oath was duly administered by a duly authorized individual." *State v. Davies*, 2013-Ohio-436, ¶ 24 (11th Dist.); *see* R.C. 147.011(C) (defining "jurat" as "a notarial act in which a notary public certifies the administration of an oath or affirmation"). Neither Crim.R. 3 nor Crim.R. 4.1 require a jurat. "[I]nstead, as to the 'oath' requirement, [Crim.R. 3(A)] only states that the complaint must be made under oath before a person who has the power to administer the necessary oath." *State v. Walston*, 2019-Ohio-1699, ¶ 12 (12th Dist.). "Likewise, Crim.R. 4.1(D) requires only that the completed and signed original citation be, without unnecessary delay, sworn to and filed with the municipal court." *State v. Hudson*, 2025-

Ohio-5185, ¶ 31 (12th Dist.).

{¶ 34} Accordingly, "even if the jurat is defective, 'the validity of the complaint can still be upheld if the prosecution can otherwise show, based upon other language in the document or evidence outside the record, that a proper oath was administered by a person duly authorized to take the oath.'" *Walston* at ¶ 12, quoting *Miamisburg v. Rinderle*, 2015-Ohio-351, ¶ 5 (2d Dist.). "'In the ordinary case the fact that the complaint is under oath is shown by the signature of the officer administering the oath.'" *Id*., quoting *Davies* at ¶ 25.

{¶ 35} The distinction between an oath, or jurat, and an acknowledgment is important. An acknowledgment is "a declaration by an individual that the individual has signed a record for the purposes stated in the record." R.C. 147.011(A). A jurat, by contrast, requires the signer to give "an oath or affirmation" that the statement is true. R.C. 147.011(C). The Ohio Supreme Court has explained that "[t]he 'key difference' between a jurat and an acknowledgment is that 'an acknowledgment is not made under oath.'" *In re Disqualification of Cook*, 2023-Ohio-4883, ¶ 10, quoting *State ex rel. Maras v. LaRose*, 2022-Ohio-3295, ¶ 32 (DeWine, J., dissenting). And the Court has observed that "'[u]nfortunately, it is not out of the ordinary for purportedly notarized documents to contain not a jurat but, rather, an acknowledgment.'" *Id.* at ¶ 9.

### b. The Complaint Lacks a Proper Oath

{¶ 36} The Statement of Facts bears the signature of Officer Rawlins as the "Officer Signature (Complaining Witness)" and the signature of Sergeant Trey Porter as "Approving Supervisor." Beside the signatures appears a notary stamp indicating Sergeant Porter is a notary public. But the document contains no language stating the complaint was made under oath before Sergeant Porter. There is no signature by Porter in his notarial capacity. And there is no indication that an oath or affirmation was

administered.

{¶ 37} There is an acknowledgment clause, but that clause is both conditional and insufficient. The acknowledgment at the bottom of the Statement reads:

> If the arresting officer is employed by an agency other than the Middletown Division of Police, the signature of the approving supervisor serves the sole purpose of establishing that the arresting officer swears to the truth of the statement of facts.

By its express terms, this clause applies only when the arresting officer is employed by an agency other than Middletown. Since Officer Rawlins was employed by the Middletown Division of Police, even the limited acknowledgment function described in this clause does not apply to this case. And even if the acknowledgment clause did apply, an acknowledgment is not equivalent to an oath. *See Grinder v. Schaaf*, 2025-Ohio-4723 (11th Dist.) (finding mechanic's lien affidavits invalid because the notarial certificate contained only an acknowledgment rather than a jurat).

{¶ 38} The Statement of Facts contains Officer Rawlins's signature and a notary stamp with Sergeant Porter's name, but nothing indicates that an oath was actually administered. There is no "sworn to before me" language. There is no signature by the notary in his notarial capacity verifying administration of an oath. The acknowledgment clause, by its own terms, does not even purport to apply to Middletown officers.

{¶ 39} We note that the Middletown complaint form used in *Middletown v. Goldberg*, 2017-Ohio-788 (12th Dist.), which this court upheld, contained explicit language that the officer's statement was "'sworn to before me and signed in my presence.'" *Id.* at ¶ 13. A deputy clerk signed the complaint in that case. *Id.* The complaint form in *Goldberg* thus contained the hallmarks of a valid jurat that are absent here: oath language, administration by an authorized official (the deputy clerk), and the official's signature. As Conley correctly observes, the *Goldberg* complaint and the present

complaint are materially different, and the differences are dispositive.

### c. Remand is Unwarranted

{¶ 40} In *State v. Hill*, 2018-Ohio-1345 (3rd Dist.), the Third District found a complaint defective for an oath deficiency bearing a surface resemblance to this case. In that case, the complaint bore a notary stamp, but the notary had not signed the document. *Id.* at ¶ 17-18. The court reversed the conviction but remanded for an evidentiary hearing, reasoning that "if evidence outside the record shows that [the notary] actually administered the oath, despite not personally signing, or someone else authorized to administer an oath actually did so, the complaint would not be defective and the conviction would not be void." *Id.* at ¶ 20; *see also Walston*, 2019-Ohio-1699, at ¶ 12 (12th Dist.).

{¶ 41} This framework does not apply in the circumstances here. In *Hill*, the complaint contained express "sworn to and subscribed before me" language on the line beneath the officer's signature. *Id.* at ¶ 17. The notary's stamp and official seal appeared on the document. *Id.* The only deficiency was the absence of the notary's personal signature. *Id.* at ¶ 18. In other words, the face of the complaint in *Hill* affirmatively indicated that an oath *may have been* administered; the question was simply whether the notary's failure to sign reflected a clerical oversight or a failure to administer the oath at all. That ambiguity justified a remand.

{¶ 42} No such ambiguity exists here. The Statement of Facts contains no "sworn to" language of any kind. The conditional acknowledgment clause does not apply to Middletown officers by its express terms. The document was signed by a fellow Middletown officer acting as "Approving Supervisor," not by an independent oath-administering official such as a deputy clerk. There is, in short, nothing in this record from which one could reasonably infer that an oath was ever administered. Where the document is not merely ambiguous but altogether devoid of any indicia that an oath

occurred, remanding for further proceedings would be a futile exercise. *Compare New Albany v. Dalton*, 104 Ohio App.3d 307, 311 (10th Dist. 1995) (reversing outright, without remand, where the officer "admitted at trial that he did not swear to the complaints before the mayor of New Albany, whose name appears on the jurat," and the sergeant's acknowledgment did "not appear on either complaint").

### 7. Conclusion

{¶ 43} We conclude that the complaint in this case, the Statement of Facts, fails to comply with Crim.R. 3 in two respects. It contains no numerical designation of the charged ordinance, and it fails to include a proper oath.

{¶ 44} Because the complaint fails to satisfy the requirements of Crim.R. 3, it is invalid and did not invoke the trial court's subject-matter jurisdiction. *See Mbodji*, 2011-Ohio-2880, at paragraph one of the syllabus; *State v. Dees*, 2016-Ohio-2772, ¶ 9 (12th Dist.) (concluding that "in the absence of a valid charging instrument, the municipal court lacked subject-matter jurisdiction to convict" the defendant).

{¶ 45} The first assignment of error is sustained.

### B. Ineffective Assistance of Appellate Counsel

{¶ 46} The second assignment of error alleges:

> COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE INITIAL APPEAL.

{¶ 47} In his second assignment of error, Conley contends that his appellate counsel was ineffective for failing to raise the Crim.R. 3 jurisdictional challenge that we have sustained above.

{¶ 48} This reopened appeal exists only because Conley demonstrated, at the first stage of the App.R. 26(B) process, a genuine issue as to whether appellate counsel was constitutionally deficient in omitting the jurisdictional challenge. Conley has now prevailed

on the very claim his counsel failed to raise. The question is whether we must now retrace our steps and conduct a full ineffective-assistance analysis, or whether our resolution of the first assignment of error provides Conley all the relief this court can give.

{¶ 49} The answer is the latter. The remedy for ineffective assistance of appellate counsel under App.R. 26(B) is the reopening of the appeal and consideration of the omitted claims. App.R. 26(B)(7). If those claims succeed, the appellate court "enter[s] the appropriate judgment" on the merits. App.R. 26(B)(9). That is precisely what we have done. We have considered the omitted claim, found it meritorious, and entered judgment reversing Conley's conviction for want of subject-matter jurisdiction. Conley has obtained through this reopened appeal the precise relief he would have obtained had his appellate counsel raised the Crim.R. 3 challenge in the first instance. There is no further remedy the second assignment of error could provide.

{¶ 50} Nor would a full ineffective-assistance analysis serve any practical purpose. To establish ineffective assistance of appellate counsel, a defendant must demonstrate both deficient performance and prejudice, that is, "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Combs*, 2020-Ohio-5397, ¶ 22 (12th Dist.). But we need not hypothesize about whether a "different outcome" was reasonably probable. We know the outcome is different. Our disposition of the first assignment of error establishes, as a matter of law, that the trial court never had jurisdiction to convict Conley. A conviction entered without subject-matter jurisdiction is a nullity. *See Mbodji*, 2011-Ohio-2880, at ¶ 10; *Sallee*, 2012-Ohio-3617, at ¶ 12-13. There is no prejudice determination left to conduct, because the underlying defect is not one that might or might not have changed the result. It is one that nullified the proceeding entirely. The merits disposition has already answered the ineffective-assistance question.

{¶ 51} The second assignment of error is moot.

### III. Conclusion

{¶ 52} We have concluded that the defective complaint in this case left the trial court without subject-matter jurisdiction. Our prior judgment is vacated, and the trial court's judgment of conviction is reversed and Conley is discharged.

SIEBERT, J., concurs.

PIPER, P.J., dissents.

**PIPER, P.J., dissenting.**

{¶ 53} My colleagues conclude that, because the complaint, referred to as the Statement of Facts, is considered defective, the municipal court lacked subject-matter jurisdiction in this case. While their de novo review ambitiously seeks to find flaws in the complaint, the idea that the municipal court *never* had jurisdiction to convict Conley of a fourth-degree misdemeanor for failing to disclose his personal information in violation of Middletown Cod.Ord. 606.30(a)(1) is misplaced. Therefore, respectfully, I must dissent.

{¶ 54} Subject-matter jurisdiction for municipal courts is established by statute. "A municipal court in Ohio has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *State v. Partee*, 2018-Ohio-3878, ¶ 19 (10th Dist.). Specifically, R.C. 1901.20(A)(1) states, "The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory…"

{¶ 55} As the basis for his claim of ineffective assistance of appellate counsel, Conley argues that his trial counsel was ineffective for not raising the issue of a lack of subject-matter jurisdiction with the municipal court. However, it is well established that appellate counsel is not required to raise every possible issue to provide constitutionally

effective assistance in an appeal. *State v. Burke*, 2002-Ohio-5310, ¶ 7. We are instead to apply a heavy measure of deference to appellate counsel's judgments and indulge a strong presumption that appellate counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Tenace*, 2006-Ohio-2987, ¶ 7.

{¶ 56} There is no dispute that the ordinance under which Conley was charged, Middletown Cod. Ord. 606.30(a)(1), was a fourth-degree misdemeanor. Nor is there any dispute that the conduct underlying the charge took place within the municipal court's territorial boundary. The transcript submitted in this appeal shows that the charge arose after it was alleged that Conley, while sitting in his vehicle parked on the street outside a woman's home in Middletown, Ohio, failed to provide his name, address, or date of birth when asked for that information by Middletown Police Officer Ryun Rawlins.

{¶ 57} The argument that subject-matter jurisdiction is nonexistent "'is determined without regard to the rights of the individual parties involved in a particular case. Rather the focus is whether the forum itself is competent to hear the controversy.'" *State ex rel. Johnson v. McNamara*, 2025-Ohio-2891, ¶ 15, quoting *Bank of Am. N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 19. It is abundantly clear that the municipal court had subject-matter jurisdiction over the ordinance the City sought to enforce against Conley in this case. Therefore, trial counsel was not ineffective for not objecting or raising a subject-matter jurisdiction issue as a defense. [2]

{¶ 58} There is a difference between a court that lacks subject-matter jurisdiction over a case and one that improperly exercises that jurisdiction. *Pratts v. Hurley*, 2004-

---

2. My colleagues *expressly* emphasize that, pursuant to App. R. 26(B)(9), Conley "must establish the merits" of his claim that prior appellate counsel rendered ineffective assistance, yet they mooted the claim, without analysis, avoiding the essential elements required to establish ineffective assistance of counsel. If prior appellate counsel would have raised the issue that trial counsel was ineffective for not raising subject-matter jurisdiction, the record before us unquestionably supports the existence of subject-matter jurisdiction.

Ohio-1980, ¶ 10. Conley's assignment of error is that the municipal court's subject-matter jurisdiction over this case never *existed.* However, Conley confuses the assigned error with a flawed argument that the municipal court should not have exercised jurisdiction because defects in the complaint show that subject-matter jurisdiction was not properly *invoked.*

{¶ 59} Significantly, the reasons for a court not to exercise jurisdiction must be raised before trial. Crim.R. 12(C). Deficiencies can be waived if they are not raised in a timely manner. *See, e.g., State v. Mbodji*, 2011-Ohio-2880 (where the procedural defect, a failure to have the complaint reviewed as mandated by statute, was not a barrier to subject-matter jurisdiction and must be raised before trial pursuant to Crim.R. 12 [H]). Importantly, *Mbodji* does not stand for the proposition that a complaint lacking completeness negates a municipal court's subject-matter jurisdiction. Rather, while a properly filed complaint invokes subject-matter jurisdiction, *Mbodji* also indicates that defects in a complaint do not deny the municipal court subject-matter jurisdiction if those defects are to be raised prior to trial. In *Mbodji*, the failure of a statutorily created prerequisite did not undermine jurisdiction.

{¶ 60} Because there is a difference between the legislation of the General Assembly establishing the existence of jurisdiction for municipal courts and the rules governing how that jurisdiction is exercised, my colleagues are misled by Conley's confusing argument. "If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void." *Kuchta*, 2014-Ohio-4275, at ¶ 19. This means that, while an error may exist in a complaint, it does not always require a conviction to be vacated, as my colleagues have done in this case.

{¶ 61} The majority opinion questions whether the complaint adequately informs

Conley of his charge. This is because Crim.R. 3 requires that a criminal complaint start with a sworn, fact-based charge that provides the defendant proper notice. But nothing in Crim.R. 3 mentions jurisdiction—it is simply the process that initiates the prosecution. Equally important, however,, Crim.R. 12(C) covers issues that must be raised before trial, such as defects in the prosecution process, problems with the information or complaint, and matters related to discovery.

{¶ 62} Any issues with notice provided by the complaint or the defendant's conduct that constituted the offense could have been raised in the municipal court. They were not; most likely, trial counsel knew what he was dealing with, had a strategy, and understood that the complaint could be amended at any time in accordance with Crim.R. 7(D). My colleagues emphasize a lack of "notice" within the complaint. However, this is a prosecutorial procedural issue that can be addressed through discovery, a request for a bill of particulars, or an objection before trial. It relates to the initiation of prosecution, not the municipal court's authority to exercise jurisdiction. Use of Crim. R. 12 (C) would have corrected any deficiencies in notice *if the lack of notice was truly an issue.*

{¶ 63} Additionally, if the complaint needs to be refiled, it can be dismissed and refiled as long as it is within the statute of limitations, even if it is imperfect. It was clearly a trial strategy for trial counsel to minimize Conley's conduct and highlight the weaknesses of the State's case, arguing to the jury that no criminal investigation was underway. The record before us indicates that defense counsel was fully aware of what he was defending. Therefore, because my respected colleagues' idea that the municipal court never had jurisdiction to convict Conley for failing to disclose his personal information is misplaced, I express my disagreement.

{¶ 64} Conley does not argue a lack of notice or that he suffered prejudice. Conley never claimed that trial counsel would have been successful if they had raised, either

before or during trial, the idea that subject-matter jurisdiction was nonexistent. The facts contradict the likelihood of such success. Although my colleagues believe that subject-matter jurisdiction would have been a stronger argument in the initial appeal, such a preference would not have succeeded in a *Strickland* analysis if it had been raised in that appeal. Since trial counsel was not ineffective, prior appellate counsel was also not ineffective for failing to present such an argument. It would be a clear injustice to the administration of criminal procedure to vacate the jury's verdict and Conley's conviction. This is especially true here, as this court has already affirmed Conley's conviction on appeal, a decision for which the Ohio Supreme Court declined jurisdiction to review. *Conley*, 2025-Ohio-136, discretionary appeal not allowed, 2025-Ohio-1846. I regret that my colleagues accepted the invitation to do so in this very underdeveloped Crim. R.26(B) appeal and I respectfully dissent.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and appellant is discharged. The prior judgment of this court is vacated.

It is further ordered that a mandate be sent to the Middletown Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge